IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

OLD GUARD INSURANCE COMPANY, )
                                          )
         Plaintiff,                   )
                                          )
         v.                               )      No. 23-cv-01098
                                          )
RIVERWAY PROPERTY MANAGEMENT,)
LLC, AARON ROSSI, MARK ROSSI,     )
DAVIE AND ASSOCIATES            )
DERMATOPATHOLOGY, P.A., and     )
REDITUS LABORATORIES, LLC, by and )
through its Receiver, Adam P. Silverman, )
Esq.,                                       )
                                          )
         Defendants.               )

SECOND AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Old Guard Insurance Company, ("Old Guard"), by its attorneys, Esp Kreuzer Cores LLP, pursuant to 28 U.S.C. 2201 and 2202, for its Second Amended Complaint for Declaratory Judgment against Defendants, Riverway Property Management, LLC; Aaron Rossi; Mark Rossi; Davie and Associates Dermatopathology, P.A., ("DAAD"), and Reditus Laboratories, LLC, by and through its Receiver, Adam P. Silverman, Esq. ("Reditus Labs") states:

I. THE PARTIES

1.     Old Guard is a Pennsylvania corporation, with its principal place of business in Westfield Center, Ohio. At all times relevant herein, Old Guard was authorized to issue policies of insurance in the State of Illinois and issued a certain policy to its named insured, Riverway Property Management, LLC, as detailed herein.

2.     Riverway Property Management, LLC is a business organization that filed articles of organization with the Illinois Secretary of State on January 20, 2020, and has a principal office located at 1805 Riverway Drive, Pekin, Tazewell County, Illinois 61554 or 200 Enterprise Drive,

Pekin, Tazewell County, Illinois.  Upon information and belief, Defendant Aaron Rossi is the sole principal and/or owner of Riverway Property Management.

3.    Upon information and belief, Defendant Aaron Rossi is an individual who resides and at all times relevant herein has resided in Bloomington, Illinois.

4.    Upon information and belief, Defendant Mark Rossi is an individual who resides and at all times relevant herein has resided in Pekin, Illinois.

5.    Davie and Associates Dermatopathology, P.A., ("DAAD"), is a Texas professional association that filed first articles of organization with the Texas Secretary of State on March 11, 2009, and has a principal office located at 1508 17th Street, Plano, Texas 75074. Upon information and belief, James R. Davie, M.D. Ph.D., ("Davie"), is the sole principal and/or owner of Defendant DAAD. Upon information and belief, Davie is an individual who resides and at all times relevant herein has resided in Plano, Texas. DAAD is a potentially interested organization.

6.    DAAD is a member of an Illinois business organization by the name of Reditus Labs, and does business in the state of Illinois.

7.    Reditus Labs is a business organization that filed articles of organization with the Illinois Secretary of State on June 20, 2019, and has a principal office located at 200 Enterprise Drive, Pekin, Tazewell County, Illinois.  A Form LLC-50.1 annual report, dated June 5, 2023, identifies Aaron Rossi as the managing member of Reditus Labs.  On information and belief, the members of Reditus Labs are Reditus Healthcare, LLC, which converted into Reditus Healthcare, LP on or about May 6, 2021 and DAAD. On information and belief Reditus Healthcare, LP has a principal office located in Tazewell County, Illinois. On information and belief Aaron Rossi owns 99% of the partnership interest in Reditus Healthcare LP, as the limited partner. On information and belief AJRMF GP, LLC owns the remining 1% of the partnership

interest, as the general partner. On information and belief, AJRMF GP, LLC, is an Illinois limited liability company which AJRMD Management Company, Inc. wholly owns. On information and belief, Aaron Rossi is the sole owner of AJRMD Management Company, Inc.

8.      Adam P. Silverman is the court appointed receiver for Reditus Labs.   On information and belief, Silverman is a resident of Cook County, Illinois.

## II.  JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a) because this action is between citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. Specifically, Old Guard is a citizen of the State of Ohio. Upon information and belief, Riverway Property Management, LLC is a citizen of the State of Illinois. Upon information and belief, Aaron Rossi is a citizen of the State of Illinois. Upon information and belief Mark Rossi is a citizen of the State of Illinois. Upon information and belief, DAAD is a citizen of Texas.  Upon information and belief, Reditus Labs by and through its Receiver, Adam P. Silverman, is a citizen of the State of Illinois.

10.      Venue of this action in the Central District of Illinois is proper pursuant to 28 U.S.C. §1391(a), (b), and (c), because Old Guard issued the liability policy to Riverway Property Management at Riverway Property Management's business address of 200 Enterprise Drive, Pekin, Tazewell County, Illinois and the underlying lawsuits are pending in Tazwell County, Illinois.

## III.  THE UNDERLYING LAWSUITS

11.      On February 3, 2021, DAAD filed a complaint in Tazewell County, captioned *Davie and Associates Dermatopathology, P.A. v. Reditus Healthcare, LLC, Aaron Rossi, and Reditus Laboratories, LLC*, 2021 L 000019 (Tazewell County, IL), (the "DAAD Lawsuit") seeking an accounting under the Illinois Limited Liability Act with a statutory award of attorneys' fees and

costs; the remedy of expulsion pursuant to 805 ILCS 180/35-45; and the remedy of dissolution pursuant to 805 ILCS 180/35-1, alleging that Aaron Rossi and Reditus Health intentionally inflicted oppression upon DAAD and failed to distribute to DAAD its share of profits from COVID-19 PCR testing, in an unlawful effort to  buy-out DAAD's minority ownership interest in Reditus Labs for a low-ball amount.  Old Guard filed a copy of the underlying complaint as (Dkt. 1-2 at 18, 20, 21).

12.    The underlying DAAD complaint alleges that between February of 2019 and June of 2019, Reditus Healthcare, LLC, by and through its manager Aaron Rossi, negotiated with DAAD, by and through James Davie, M.D., to form Reditus Labs. (Dkt. 1-2 at 2-3¶7-13).

13.    The underlying DADD complaint alleges that a copy of the limited liability company agreement for Reditus Labs is attached as Exhibit A. (Dkt. 1-2 at 6¶22).

14.    The limited liability company agreement for Reditus Labs has language stating that it is made on June 20, 2019. (Dkt. 1-2 at 6¶22 at Exhibit A).

15.    The underlying DAAD complaint alleges that DAAD made capital contributions to Reditus Labs in an amount in excess of $220,000.00. (Dkt. 1-2 at 11¶34).

16.    The underlying DAAD complaint alleges that during October of 2019, Aaron Rossi embarked on an effort to begin to exclude DAAD from any role in Reditus Labs. (Dkt. 1-2 at 8¶29).

17.    The underlying DAAD complaint alleges that around January 22, 2020, Aaron Rossi and Reditus Healthcare made a low-ball offer to buy-out DAAD's ownership interest in Reditus Labs for $50,000.00. (Dkt. 1-2 at 10-11¶32-33).

18.    The underlying DAAD complaint alleges that between January 22, 2020 and December of 2020, Aaron Rossi and Reditus Healthcare made more low-ball offers to buy-out DAAD's ownership interest in Reditus Labs. (Dkt. 1-2 at 11-12¶34-41).

19.    The underlying DAAD complaint alleges that during that time period Reditus Labs

obtained very lucrative and profitable contracts to perform COVID-19 PCR testing for the State of Illinois and Peoria School District No. 150. (Dkt. 1-2 at 13¶44).

20.     The underlying DAAD complaint alleges that from January of 2020 through 2021, Reditus Labs performed over 1.4 million COVID-19 PCR tests. (Dkt. 1-2 at 13¶45).

21.     The underlying DAAD complaint alleges that despite making significant profits during 2020 and 2021, Reditus Labs did not distribute any portion of the profits to DAAD. (Dkt. 1-2 at 14¶46).

22.     The underlying DAAD complaint alleges that Aaron Rossi and Reditus Healthcare concealed financial information from DAAD as part of an effort to improperly remove DAAD from Reditus Labs. (Dkt. 1-2 at 9-10¶31, 20-21¶67).

21.     The underlying DAAD complaint alleges that Aaron Rossi and Reditus Healthcare engaged in oppressive, willful, and persistent misconduct intended to cause significant financial harm to DAAD in the form of income tax liabilities and penalties, without receiving any distributions, so as to leverage DAAD to surrender its ownership interest in Reditus Labs for less than fair value. (Dkt. 1-2 at 21¶68).

22.     On September 17, 2021, DAAD filed a first amended complaint. Old Guard filed a copy of the underlying first amended complaint as (Dkt. 1-3).

23.     The factual allegations of the underlying first amended DAAD complaint are substantially the same as the factual allegations within the original underlying complaint. (Dkt. 1-3).

24.     The underlying first amended DAAD complaint adds allegations that DAAD is entitled to monetary damages for DAAD's share of profits that Reditus Labs earned through its operations and for attorney's fees and costs under Section 15-3 of the Illinois Limited Liability Act in bring the claim. (Dkt. 1-3 at 20¶92, 21¶100).

25.    The underlying first amended DAAD complaint adds allegations that Aaron Rossi's conduct against DAAD was malicious and reprehensible, entitling DAAD to punitive damages. (Dkt. 1-3 at 20¶92, 21¶100).

26.    The first amended DADD complaint adds an allegation that on May 11, 2021, Aaron Rossi and Reditus Healthcare caused a single inadequate distribution to be made to DAAD that was nearly $2 million short of DAAD'S expected share of 2020 income tax liability. (Dkt. 1-3 at 13¶62).

27.    The first amended DAAD complaint adds allegations that Aaron Rossi and Reditus Healthcare caused Reditus labs to make unequal distributions to Reditus Healthcare, not based upon the members' percentage of shares, under the guise of payments owed to other business entities that Aaron Rossi controlled. (Dkt. 1-3 at 14-15¶68-70).

28.    The first amended DAAD complaint adds allegations that Aaron Rossi diverted Reditus Labs misappropriated company assets for his personal benefit to other Aaron Rossi managed limited liability companies, such as AJR MD Consulting, LLC. (Dkt. 1-3 at 15¶70, 21¶96).

29.    The first amended DAAD complaint adds allegations that Aaron Rossi acted with malicious and reprehensible intent to enrich himself and to damage DAAD, in knowing violation of the operating agreement and without any reasonable excuse. (Dkt. 1-3 at 21¶¶96-101, 23¶108).

30.    On May 7, 2021, the trial court in the underlying DAAD lawsuit entered a stipulated protective order against unauthorized use or disclosure of confidential information. Old Guard filed as (Dkt. 1-4) a copy of the protective order.

31.    Paragraph 7 of the protective order, titled "Pleadings and Briefs To Be Filed Under Seal," reads: "Any pleading, brief, or other document filed wit the Court in this case that discusses the contents or incorporates any confidential material shall be filed under seal." (Dkt. 1-4 at 5¶7).

32.    On February 3, 2022, DAAD filed its underlying second amended complaint under

seal.

33.    The underlying second amended DAAD complaint does not name Riverway Property Management, LLC as a defendant.

34.    On December 29, 2022, DAAD filed its underlying third amended complaint under seal, adding shareholder derivative claims to the benefit of Reditus Labs against AJR MD Consulting, LLC, Riverway Property Management LLC, and other business organizations that Aaron Rossi formed.

35.    The underlying third amended DAAD complaint alleges that AJR MD Consulting, LLC, Riverway Property Management LLC, and other business organizations that Aaron Rossi formed, knowingly and intentionally aided and abetted Aaron Rossi's misappropriation of Reditus Labs's assets.

36.    Old Guard first received notice of the DAAD lawsuit on January 13, 2023.

37.    Old Guard first received notice of the incidents involving DAAD on January 13, 2023.

38.    On July 12, 2023, Reditus Labs filed a complaint in Tazewell County, captioned *Reditus Laboratories, LLC, by and through its Receiver, Adam P. Silverman, Esq. v. Aaron Rossi, Reditus Healthcare LP, AJRMD Management Company, Inc., AJR MD Consulting, LLC, AJR Brands, LL, PR Manufacturing Enterprises, LLC d/b/a PAL Health Technologies, LLC, RP Building Management, LLC, Riverway Craft Laboratories LLC, Riverway Property Management, LLC, Lawrence J. Rossi, Jr. M.D., Tri-County Anesthesia, S.C., Molly Rossi, and AJRMF GP, LLC,* 2023 LA 000056 (Tazewell County, IL), (the "Reditus Labs Lawsuit"). Old Guard field a copy of the Reditus Labs complaint as (Dkt. 22-1).

39.    The underlying Reditus Labs complaint alleges that Aaron Rossi willfully and

wantonly breached duties to Reditus Labs and its members in one or more of the following ways: a) causing Reditus Labs to enter into an Employment Agreement and Management Services Agreement as part of a scheme to misappropriate Reditus Labs' funds; b) using Reditus Labs' funds to fund settlement agreements with Dr. Geral Paul and his brother Rodney Bare; c) using Reditus Labs' funds to purchase an industrial building ideal for the operations of a medical laboratory at 200 Enterprises Drive, Pekin, Illinois, and causing the property to be placed in the name of AJR Consulting instead of Reditus labs as part of a scheme to misappropriate Reditus Labs' funds; d) using Reditus Labs' funds to pay for leasehold improvements that benefit an entity in which Aaron Rossi had an interest, and causing Reditus labs to enter into only a month-to-month lease for the improved premises; e) misappropriating Reditus Labs' funds via a variety of other methods; f) failing to maintain proper and adequate records of the expenditures of Reditus Labs' funds; and g) using Reditus Labs's funds to fund a Clinical Medical Director Services Agreement and an oral agreement with a medical group that Aaron Rossi's father, Larry Rossi, wholly owned. (Dkt. 22-1 at 12¶77-94, 23-24¶147-158, 26¶162-163).

40. The underlying Reditus Labs complaint alleges that Aaron Rossi's misappropriation scheme involved fraud and deceit. (Dkt. 22-1 at 8-9¶45-55, 9-10¶56-67, 27¶167-170).

41. The underlying Reditus Labs complaint seeks from Aaron Rossi an accounting of all payments from Reditus Labs to Aaron Rossi, the Rossi Affiliates, and any other entity which Aaron Rossi has an interest; recission of the Employment Agreement, the Management Services Agreement, the Clinical Medical Director Service Agreement, and the oral agreement; a constructive trust on all compensation and benefits in all forms that Aaron Rossi received from Reditus Labs; the remedy of discouragement of all compensation and benefits in all forms that Aaron Rossi receive from Reditus Labs; the remedy of discouragement of all profits and other benefits that Aaron Rossi

obtained from Reditus Labs; seeking monetary damages; and seeking punitive damages. (Dkt. 22-1 at 26, 28-30, 33).

42.    The underlying Reditus Labs complaint further alleges that Riverway Property Management, LLC, among other business organizations that Aaron Rossi controlled, knowingly and substantially assisted Aaron Rossi's misappropriation scheme by accepting and facilitating the fruits of the scheme, including by accepting funds that Aaron Rossi misappropriated from Reditus Labs. (Dkt. 22-1 at 46¶289).

43.    The underlying Reditus Labs complaint seeks from Riverway Property Management, LLC, monetary and punitive damages. (Dkt. 22-1 at 47).

44.    On November 28, 2023, Old Guard first received notice that Reditus Labs filed the lawsuit 2023 LA 000056 (Tazewell County, Illinois).

### IV.  THE OLD GUARD COMMERCIAL PACKAGE POLICIES

45.    Old Guard issued a new commercial package policy to Riverway Property Management, LLC, policy number CWP 181326K, effective October 4, 2021 to October 14, 2022. Old Guard filed as (Dkt. 1-5) a copy of the commercial package policy that it issued to Riverway Property Management LLC.

46.    Old Guard issued a renewal commercial package policy to Riverway Property Management, LLC, policy number CWP 181326K, effective October 4, 2021 to October 14, 2022. Old Guard filed as (Dkt. 1-6) a copy of the commercial package policy that it issued to Riverway Property Management LLC.

47.    The common policy declarations of the Old Guard policies identify the business of the named insured as "Contractors;" the entity of the named insured as "LLC;" and the schedule of insured locations as "Loc. 1 Lots 5 & 6 Of Riverway Park Resubdivision Pekin, IL 61554" and "Loc.

2 South Of Hanna Drive, East Of 5th Street Pekin, IL 61554. (Dkt. 1-5 at 13)(Dkt. 1-6 at 17).

48.    The policies include a commercial general liability coverage part. The CGL has limits of $1 million each occurrence and $2 million in the aggregate. (Dkt. 1-5 at 14)(Dkt. 1-6 at 19).

49.    The top of the first page of the Commercial General Liability Coverage Form states as follows:

> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us" and "our" refer to the company providing this insurance.
>
> The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured. * * *

(Dkt. 1-5 at 28)(Dkt. 1-6 at 33).

50.    Section II, titled "Who Is An Insured," reads in part:

> 1. If you are designated in the Declarations as:
>    c.   A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.
>
>    *        *        *
>
> 2. Each of the following is also an insured:
>    a.   Your 'volunteer workers' only while performing duties related to the conduct of your business, or your 'employees', other than either your 'executive officers' (if you are an organization other than a partnership, joint venture or limited liability company), or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these 'employees' or 'volunteer workers' are insureds for:
>        (1) 'Bodily injury' or 'personal and advertising injury':
>            (a) To you, to your partners or members (if you are a partnership or joint venture, to your members (if you are a limited liability company, to a co-

'employee' while in the course of his or her employment or performing duties related to the conduct of your business, or to your other 'volunteer workers' while performing duties related to the conduct of your business;

\*        \*        \*

(2) 'Property damage' to property:
(a) Owned, occupied or used by;
(b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your 'employees', 'volunteer workers', any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b. Any person (other than your 'employee' or 'volunteer worker'), or any organization while acting as your real estate manager.

\*        \*        \*

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;
b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and
c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

(Dkt. 1-5 at 36-37)(Dkt. 1-6 at 41-42).

51.    Endorsement CG 71 64 05 18, titled "Commercial General Liability Expanded Endorsement," reads in part:

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERGE FORM

*        *        *

Under SECTION II – WHO IS AN INSURED, item 2.a. is replaced with the following:

a. Your "employees" or volunteer workers, other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or volunteer workers are an insured for:

(1) "Bodily injury" or "personal and advertising injury":

   (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are limited liability company), or to a co-"employee" or co-volunteer worker while that is either in the course of his or her employment or performing duties related to the conduct of your business; * * *

(2) 'Property damage' to property:

   (a) Owned, occupied or used by;

   (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by you, any of your 'employees', 'volunteer workers', any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

Under SECTION II - WHO IS AN INSURED, item 3.a. is replaced with the following:

a. Coverage under this provision is afforded only until the end of the policy period or the next anniversary of this policy's effective date after you acquire or form the organization, whichever is earlier.

*        *        *

Under SECTION II - WHO IS AN INSURED the last paragraph of this section is replaced with the following:

   Except as provided in 3. above, no person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a named insured in the Declarations.

(Dkt. 1-5 at 76-79)(Dkt. 1-6 at 82-84).

52.     The Insuring Agreement of "Coverage A – Bodily Injury and Property Damage Liability" of the Commercial General Liability Form provides as follows:

SECTION I – COVERAGES

COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.  Insuring Agreement

    a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies.  We will have the right and duty to defend the insured against any 'suit' seeking those damages.  However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' of 'property damage' to which this insurance does not apply. ***

2.  Exclusions
    This insurance does not apply to:
    a.  Expected Or Intended Injury
        'Bodily injury' or 'property damage' expected or intended from the standpoint of the insured. This exclusion does not apply to 'bodily injury' resulting from the use of reasonable force to protect persons or property.
    b.  Contractual Liability
        'Bodily injury' or 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. *  * *
    j.  'Property Damage' to:
    (1) Property you own, rent, or occupy * * *
    (3) Property loaned to you;
    (4) Personal property in the care, custody or control of the insured; * *  *
    o. Personal And Advertising Injury
        'Bodily injury' arising out of 'personal and advertising injury'.
    p. Electronic Data
        Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data. * * *

(Dkt. 1-5 at 28-32)(Dkt. 1-6 at 33-37).

53.     The Insuring Agreement of "Coverage B – Personal And Advertising

Injury" of the Commercial General Liability Form provides as follows:

1. Insuring Agreement

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'personal and advertising injury' to which this insurance does not apply. * * *

2. Exclusions
   This insurance does not apply to:
   a. Knowing Violation Of Rights Of Another
      'Personal and advertising injury' caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury'.
   b. Material Published With Knowledge Of Falsity
      'Personal and advertising injury' arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.
   c. Material Published Prior To Policy Period
      'Personal and advertising injury' arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.
   d. Criminal Acts
      'Personal and advertising injury' arising out of a criminal act committed by or at the direction of the insured.
   e. Contractual Liability
      'Personal and advertising injury' for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.
   f. Breach Of Contract
      'Personal and advertising injury' arising out of a breach of contract, except an implied contract to use another's advertising idea in your 'advertisement'. * * *
   i. Infringement Of Copyright, Patent, Trademark Or Trade Secret
      'Personal and advertising injury' arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your 'advertisement'.
      However, this exclusion does not apply to infringement, in your 'advertisement', of copyright, trade dress or slogan. * * *

14

(Dkt. 1-45 at 33)(Dkt. 1-6 at 38-39).

54.    Endorsement CG40 15 12 19 of the Old Guard policy, titled "Cannabis Exclusion With Hemp Exception," states that the insurance under the commercial general liability coverage part and the products/completed operations liability coverage part: "does not apply to: 1. 'Bodily injury', 'property damage,' or 'personal and advertising injury' arising out of: a. The design, cultivation, manufacture, storage, processing, packaging, handling, testing, distribution, sale, serving, furnishing, possession or disposal of 'cannabis'; * * * (Dkt. 1-5 at 71)(Dkt. 1-6 at 77).

55.    Endorsement CG 70 23 07 15, titled "Care, Custody or Control Coverage Form," reads in part:

> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> SCHEDULE

| | |
|---|---|
| Each Occurrence Limit | $ 2,500 |
| General Aggregate Limit | $ 5,000 |
| Deductible | $ 250 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

> **1.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "property damage" to property of others while in your care, custody or control of property as to which you are exercising physical control if the "property damage" arises out of your business operations. * * *
>
> **4.** The insurance under this endorsement shall not apply:
> **a.** To "property damage" of property at premises owned, rented, leased, operated, or used by you; * * *

(Dkt. 1-5 at 75)(Dkt. 1-6 at 81).

56.    Section V of the Commercial General Liability Coverage Form, titled

"Definitions," reads in part:

1.      "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:
a.  Notices that are published include material placed on the Internet or on similar electronic means of communication; and
b.  Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement. *        *        *

3.      "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

*        *        *

5.      "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6.      "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

*        *        *

13.      "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14.      "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
a.  False arrest, detention or imprisonment;
b.  Malicious prosecution;
c.  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
d.  Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
e.  Oral or written publication, in any manner, of material that violates a person's right of privacy;
f.  The use of another's advertising idea in your "advertisement"; or
g.  Infringing upon another's copyright, trade dress or slogan in your "advertisement". *        *        *

17.    "Property damage" means:
    a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
    b.    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.
For the purposes of this insurance, electronic data is not tangible property.

18.    "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged.  * * *

(Dkt. 1-5 at 40-43)(Dkt. 1-6 at 45-48).

57.    Endorsement CG40 15 12 19 of the Old Guard policy, titled "Cannabis Exclusion With Hemp Exception," further reads in part:

M. DEFINITIONS
Under SECTION V - DEFINITIONS, item 3. is deleted and replaced with the following:
3. "Bodily injury" means bodily injury, disability, sickness, or disease sustained by a person, including death resulting from any of these at any time. "Bodily injury" includes mental anguish or other mental injury resulting from "bodily injury".
Under SECTION V - DEFINITIONS, item 14. The following is added to the definition of "Personal and advertising injury":
h. Discrimination or humiliation that results in injury to the feelings or reputation of a natural person but only if such discrimination or humiliation is:
    (1) not done intentionally by or at the direction of:
        (a) The insured; or
        (b) Any "executive officer," director, stockholder, partner, member or manager (if you are a limited liability company) of the insured; and
    (2) Not directly or indirectly related to the employment, prospective employment, past employment or termination of employment of any person or persons by any insured.
Under SECTION V - DEFINITIONS, the following definition is added:
23. "Loss" means unintentional damage or destruction but does not include disappearance, theft, or loss of use.

(Dkt. 1-5 at 80)(Dkt. 1-6 at 86).

58.    Condition 2 of Section IV of the Commercial General Liability Form of Old

Guard's policy reads in part:

Duties In The Event Of Occurrence, Offense, Claim Or Suit

a.    You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons or witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b.    If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c.    You and any other insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit;"

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

    d.  No insured will, except at the insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

(Dkt 1-5 at 38)(Dkt. 1-6 at 43).

## V. BASIS FOR RELIEF

<u>COUNT I: NO DUTY TO DEFEND</u>

1-58.  Old Guard adopts paragraphs 1 through 58 of the general allegations as paragraphs 1 through 58 of Count I.

59.  Old Guard owes no duty to defend Riverway Property Management LLC, Aaron Rossi, and Mark Rossi against the DAAD Lawsuit under the commercial package policies that Old Guard issued for one or more of the following reasons:

a)  The commercial general liability policy was not intended to protect directors and officers of Riverway Property Management and their affiliates from losses resulting from claims made against them for wrongful acts, errors, omissions, or breaches of duty;

b)  If an insured wants coverage to protect directors and officers of a business organization and their affiliates from losses resulting from claims made against them for wrongful acts, errors, omissions, or breaches of duty, that insured should obtain Directors & Officers (D&O) liability insurance, or the directors and officers are without protection from those types of claims;

c)  The commercial general liability policy was not intended to insure against a business relationship not living up to commercial expectations, i.e., economic loss;

d)  The commercial general liability policy was not intended to operate like an insurance bond;

e)  The gravamen of the underlying third amended DAAD complaint is that the business relationship between the members of Reditus Labs' did not live up to DAAD's commercial expectations, in that the majority member has refused to pay (deprived) DAAD of DAAD's share of profits from COVID-19 PCR tests;

f)  The underlying third amended DAAD complaint does not affirmatively allege any "fortuitous" loss, under Coverage A;

g) The underlying third amended DAAD complaint does not affirmatively allege any "occurrence" resulting in "bodily injury" or "property damage;"

h) The language of the underlying third amended DAAD complaint sounds in phrases such as "intended by chicanery," "fraud," "embezzlement," concealed; "theft," "refused to provide . . . information," "stole," "ignored," "conspired," "knowing," "willful," and "intentional;" which are the exact opposition of accidental conduct;

i) Refusing to pay DAAD its share of profits from the business of conducting COVID-19 PCR testing is not an undesigned, sudden and unexpected highly dangerous event that caused "bodily injury" or damage to "property damage;"

j) Loss or harm resulting from refusing to pay DAAD its share of profits from the business of conducting COVID-19 PCR testing constitutes solely economic loss;

k) Loss or harm resulting from refusing to pay DAAD its share of profits from the business of conducting COVID-19 PCR testing is not "property damage," as the general liability policy uses that term;

l) Deprivation of profits from the business of conducting COVID-19 PCR testing does not constitute "property damage," let alone loss of use of tangible property beyond the bargained for business, operations, or product;

m) Loss or harm resulting Aiding and abetting Aaron Rossi's theft or misuse of Reditus Labs' corporate assets does not constitute "property damage" as the general liability policy uses that term;

n) Reditus Labs' stolen corporate assets are not "property damage," as the general liability policy uses that term;

o) The factual allegations of the underlying third amended DAAD complaint do not involve "property damage" caused by Riverway Property Management's operations, as the policy uses that phrase;

p) The factual allegations of the underlying third amended DAAD complaint do not involve "property damage" caused by Riverway Property Management's work, as the policy uses that phrase;

q) Exclusion a., titled "Expected Or Intended Injury," of Coverage A, reinforces the proposition that the commercial general liability policy was not intended to provide coverage for liability for harm or injury that is the natural and ordinary consequences of the intentional act of refusing to pay DAAD its share of profits from the business of conducting COVID-19 PCR testing;

r) Exclusion a., titled "Expected Or Intended Injury," of Coverage A, reinforces the proposition that the commercial general liability policy was not intended to provide

coverage for liability for harm or injury that is the natural and ordinary consequences of the intentional act of depriving DAAD its share of profits from the business of conducting COVID-19 PCR testing;

s)  Exclusion a., titled "Expected Or Intended Injury," of Coverage A, reinforces the proposition that the commercial general liability policy was not intended to provide coverage for liability for harm or injury that is the natural and ordinary consequences of the intentional act of aiding and abetting Aaron Rossi to steal Reditus Labs' corporate assets;

t)  Exclusion b., titled "Contractual Liability," of Coverage A, reinforces the proposition that the commercial general liability policy was not intended to provide coverage against a business relationship not living up to commercial expectations, i.e. economic loss;

u)  The definition of "advertising injury," under Coverage B, in the Old Guard policy avoids using the term "unfair competition;"

v)  The underlying third amended DAAD complaint does not affirmatively allege any "fortuitous" loss, under Coverage B;

w)  Allegations that Riverway Property Management aided and abetted Aaron Rossi in stealing assets to deprive DAAD of DAAD'S share of profits does not constitute any injury resulting from Riverway Property Management's "advertisement;"

x)  There are no allegations that Riverway Property Management, by and through its agents, servants, or employees disseminated any information to the public at large, let alone in the course of Riverway Property Management's advertising activities, therefore, no coverage exists for Riverway Property Management under Coverage B, titled "Personal and Advertising Injury Liability;"

y)  There are no allegations that Riverway Property Management made any statements about the underlying plaintiff's products or services to deceive or confuse the public at large, let alone in the course of Riverway Property Management's advertising activities, therefore, no coverage exists under Coverage B, titled "Personal and Advertising Injury Liability;"

z)  There are no allegations that Riverway Property Management misappropriated the plaintiff's advertising idea or style of doing business, therefore, no coverage exists under Coverage B, titled "Personal and Advertising Injury Liability;"

aa) Allegations that Riverway Property Management aided and abetting Aaron Rossi stealing or misappropriating Reditus Labs' corporate assets do not constitute publishing to the public at large any intellectual property or trade secrets, in Riverway Property Management's advertising activities;

bb) Exclusion a., titled "Knowing Violation Of Rights Of Another, reinforces the proposition that Coverage B does not insure against advertising related injury which the insured intended to cause;

cc) Even in hypothetically, the underlying third amended DAAD complaint alleged factual allegations of Riverway Property Management disseminating deceptive information to the public at large in the course of Riverway Property Management's advertising activities, the allegations, viewed within the context of the underlying third amended complaint as a whole, would fall under the exclusion for injury resulting from the knowing violation of another's rights;

dd) Exclusion b., titled "Material Published With Knowledge of Falsity," reinforces the proposition that Coverage B does not insure against advertising related injury which the insured intended to cause;

ee) Even if hypothetically, the underlying third amended DAAD complaint alleged factual allegations of Riverway Property Management disseminating deceptive information to the public at large in the course of Riverway Property Management's advertising activities, the allegations, viewed within the context of the underlying third amended DAAD complaint as a whole, would fall under the exclusion for injury resulting from material published with knowledge of falsity;

ff) Even if hypothetically, the underlying third amended DAAD complaint alleged "advertising injury," to the extent that any alleged conduct is statutorily deemed criminal, exclusion d., titled "Criminal Acts," applies to bar coverage;

gg) Exclusion e., titled "Contractual Liability," reinforces the proposition that Coverage B was not intended to provide coverage against a business relationship not living up to commercial expectations, i.e., economic loss;

hh) Exclusion f., titled "Breach of Contract," reinforces the proposition that Coverage B was not intended to provide coverage against a business relationship not living up to commercial expectations, i.e., economic loss;

ii) Even if hypothetically the underlying third amended DAAD complaint included allegations that Riverway Property Management infringed upon Reditus Labs' trade secret or other intellectual property, exclusion i, titled "Infringement Of Copyright, Patent, Trademark Or Trade Secret," would apply to bar coverage;

jj) The underlying third amended complaint does not include allegations with respect to Aaron Rossi and Mark Rossi performing duties related to the conduct of business that Riverway Property Management disclosed to Old Guard within its application for insurance and within the insurance policy;

kk) The underlying third amended DAAD complaint includes affirmative allegations asserting that Aaron Rossi and Mark Rossi, individually, are liable for Aaron Rossi's and Mark Rossi's own direct conduct and actions;

ll) The underlying third amended complaint does not include affirmative allegations asserting that Aaron Rossi and Mark Rossi are vicariously or derivatively liable for the conduct or actions of Riverway Property Management in the scope of Riverway Property Management's business;

mm) There are no factual allegations in the underlying third amended DAAD complaint suggesting that Aaron Rossi's and Mark Rossi's liability is contingent upon a finding that Riverway Property Management is liable; and

nn) There may be other bases for denying coverage and Old Guard reserves the right to plead them in the future

WHEREFORE, Plaintiff, Old Guard Insurance Company prays for a judgment declaring that Old Guard Insurance Company owes no duty to defend Riverway Property Management LLC, Aaron Rossi, and Mark Rossi against the *DAAD* lawsuit, 2021 L 000019 (Tazewell County, IL).

## COUNT II: NO DUTY TO INDEMNIFY

1-58. Old Guard adopts paragraphs 1 through 58 of the general allegations as paragraphs 1 through 58 of Count II.

59. Old Guard owes no duty to indemnify Riverway Property Management LLC, Aaron Rossi, and Mark Rossi against the DAAD Lawsuit under the commercial package policies that Old Guard issued for one or more of the following reasons:

a) Where there is no duty to defend, there can be no duty to indemnify;

b) There can be no duty to indemnify prior to entry of a final judgment against Riverway Property Management, Aaron Rossi, and Mark Rossi;

c) For the same reasons that no duty to defend exists, Riverway Property Management, Aaron Rossi, and Mark Rossi cannot meet the burden of establishing that a duty to indemnify exists; and

d) There may be other bases for denying coverage and Old Guard reserves the right to plead them in the future.

WHEREFORE, Plaintiff, Old Guard Insurance Company prays for a judgment declaring that Old

Guard Insurance Company owes no duty to indemnify Riverway Property Management LLC, Aaron Rossi, and Mark Rossi against the *DAAD* lawsuit, 2021 L 000019 (Tazewell County, IL).

<u>COUNT III: NO DUTY TO DEFEND</u>

1-58.    Old Guard adopts paragraphs 1 through 58 of the general allegations as paragraphs 1 through 58 of Count III.

59.    Old Guard owes no duty to defend Riverway Property Management LLC, Aaron Rossi, and Mark Rossi against the Reditus Labs Lawsuit under the commercial package policies that Old Guard issued for one or more of the following reasons:

    a)    The commercial general liability policy was not intended to protect directors and officers of Riverway Property Management and their affiliates from losses resulting from claims made against them for wrongful acts, errors, omissions, or breaches of duty;

    b)    If an insured wants coverage to protect directors and officers of a business organization and their affiliates from losses resulting from claims made against them for wrongful acts, errors, omissions, or breaches of duty, that insured should obtain Directors & Officers (D&O) liability insurance, or the directors and officers are without protection from those types of claims;

    c)    The commercial general liability policy was not intended to insure against a business relationship not living up to commercial expectations, i.e., economic loss;

    d)    The commercial general liability policy was not intended to operate like an insurance bond;

    e)    The gravamen of the underlying Reditus Labs complaint is that the business relationship between the members of Reditus Labs' did not live up to commercial expectations, in that the majority member engaged in a scheme to misappropriate Reditus' labs funds, that involved fraud and deceit;

    f)    The underlying Reditus Labs complaint does not affirmatively allege any "fortuitous" loss, under Coverage A;

g) The underlying Reditus Labs complaint does not affirmatively allege any "occurrence" resulting in "bodily injury" or "property damage;"

h) The language of the underlying Reditus Labs complaint sounds in phrases such as "scheme," "misappropriation," "fraud and deceit," "wilful and wanton," "intended," and "intentional;" which are the exact opposition of accidental conduct;

i) Knowingly and substantially assisting Aaron Rossi's misappropriation scheme by accepting and facilitating the fruits of the scheme, including by accepting funds that Aaron Rossi misappropriated from Reditus Labs is not undesigned, sudden and unexpected highly dangerous event that caused "bodily injury" or damage to "property damage;"

j) Reditus Labs' misappropriated corporate assets are not "property damage," as the general liability policy uses that term;

k) The factual allegations of the underlying Reditus Labs complaint do not involve "property damage" caused by Riverway Property Management's operations, as the policy uses that phrase;

l) The factual allegations of the underlying Reditus Labs complaint do not involve "property damage" caused by Riverway Property Management's work, as the policy uses that phrase;

m) Exclusion a., titled "Expected Or Intended Injury," of Coverage A, reinforces the proposition that the commercial general liability policy was not intended to provide coverage for liability for harm or injury that is the natural and ordinary consequences of the intentional act of knowingly misappropriating Reditus Labs' funds;

n) Exclusion b., titled "Contractual Liability," of Coverage A, reinforces the proposition that the commercial general liability policy was not intended to provide coverage against a business relationship not living up to commercial expectations, i.e. economic loss;

o) The definition of "advertising injury," under Coverage B, in the Old Guard policy avoids using the term "unfair competition;"

p) The underlying Reditus Labs complaint does not affirmatively allege any "fortuitous" loss, under Coverage B;

q) Allegations that Riverway Property Management aided and abetted Aaron Rossi in misappropriating Reditus Labs' funds does not constitute any injury resulting from Riverway Property Management's "advertisement;"

r)  There are no allegations that Riverway Property Management, by and through its agents, servants, or employees disseminated any information to the public at large, let alone in the course of Riverway Property Management's advertising activities, therefore, no coverage exists for Riverway Property Management under Coverage B, titled "Personal and Advertising Injury Liability;"

s)  There are no allegations that Riverway Property Management made any statements about the underlying plaintiff's products or services to deceive or confuse the public at large, let alone in the course of Riverway Property Management's advertising activities, therefore, no coverage exists under Coverage B, titled "Personal and Advertising Injury Liability;"

t)  There are no allegations that Riverway Property Management misappropriated the plaintiff's advertising idea or style of doing business, therefore, no coverage exists under Coverage B, titled "Personal and Advertising Injury Liability;"

u)  Allegations that Riverway Property Management knowingly assisted Aaron Rossi's misappropriating scheme do not constitute publishing to the public at large any intellectual property or trade secrets, in Riverway Property Management's advertising activities;

v)  Exclusion a., titled "Knowing Violation Of Rights Of Another, reinforces the proposition that Coverage B does not insure against advertising related injury which the insured intended to cause;

w)  Even in hypothetically, the underlying Reditus Labs complaint alleged factual allegations of Riverway Property Management disseminating deceptive information to the public at large in the course of Riverway Property Management's advertising activities, the allegations, viewed within the context of the underlying Reditus Labs complaint as a whole, would fall under the exclusion for injury resulting from the knowing violation of another's rights;

x)  Exclusion b., titled "Material Published With Knowledge of Falsity," reinforces the proposition that Coverage B does not insure against advertising related injury which the insured intended to cause;

y)  Even if hypothetically, the underlying Reditus Labs complaint alleged factual allegations of Riverway Property Management disseminating deceptive information to the public at large in the course of Riverway Property Management's advertising activities, the allegations, viewed within the context of the underlying third amended DAAD complaint as a whole, would fall under the exclusion for injury resulting from material published with knowledge of falsity;

z)  Even if hypothetically, the underlying Reditus Labs complaint alleged "advertising injury," to the extent that any alleged conduct is statutorily deemed criminal, exclusion d., titled "Criminal Acts," applies to bar coverage;

aa) Exclusion e., titled "Contractual Liability," reinforces the proposition that Coverage B was not intended to provide coverage against a business relationship not living up to commercial expectations, i.e., economic loss;

bb) Exclusion f., titled "Breach of Contract," reinforces the proposition that Coverage B was not intended to provide coverage against a business relationship not living up to commercial expectations, i.e., economic loss;

cc) Even if hypothetically the underlying Reditus Labs complaint included allegations that Riverway Property Management infringed upon Reditus Labs' trade secret or other intellectual property, exclusion i, titled "Infringement Of Copyright, Patent, Trademark Or Trade Secret," would apply to bar coverage;

dd) The underlying Reditus Labs complaint does not include allegations with respect to Aaron Rossi and Mark Rossi performing duties related to the conduct of business that Riverway Property Management disclosed to Old Guard within its application for insurance and within the insurance policy;

ee) The underlying Reditus Labs complaint includes affirmative allegations asserting that Aaron Rossi and Mark Rossi, individually, are liable for Aaron Rossi's and Mark Rossi's own direct conduct and actions;

ff) The underlying Reditus Labs complaint does not include affirmative allegations asserting that Aaron Rossi and Mark Rossi are vicariously or derivatively liable for the conduct or actions of Riverway Property Management in the scope of Riverway Property Management's business;

gg) There are no factual allegations in the underlying Reditus Labs complaint suggesting that Aaron Rossi's and Mark Rossi's liability is contingent upon a finding that Riverway Property Management is liable; and

hh) There may be other bases for denying coverage and Old Guard reserves the right to plead them in the future

WHEREFORE, Plaintiff, Old Guard Insurance Company prays for a judgment declaring that Old Guard Insurance Company owes no duty to defend Riverway Property Management LLC, Aaron Rossi, and Mark Rossi against the Reditus Labs lawsuit, 2023 L 000056 (Tazewell County, IL).

<u>COUNT II: NO DUTY TO INDEMNIFY</u>

1-58.    Old Guard adopts paragraphs 1 through 58 of the general allegations as paragraphs 1 through 58 of Count IV.

59.    Old Guard owes no duty to indemnify Riverway Property Management LLC, Aaron Rossi, and Mark Rossi against the Reditus Labs Lawsuit under the commercial package policies that Old Guard issued for one or more of the following reasons:

  a) Where there is no duty to defend, there can be no duty to indemnify;

  b) There can be no duty to indemnify prior to entry of a final judgment against Riverway Property Management, Aaron Rossi, and Mark Rossi;

  c) For the same reasons that no duty to defend exists, Riverway Property Management, Aaron Rossi, and Mark Rossi cannot meet the burden of establishing that a duty to indemnify exists; and

  d) There may be other bases for denying coverage and Old Guard reserves the right to plead them in the future.

WHEREFORE, Plaintiff, Old Guard Insurance Company prays for a judgment declaring that Old Guard Insurance Company owes no duty to indemnify Riverway Property Management LLC, Aaron Rossi, and Mark Rossi against the Reditus Labs lawsuit, 2023 L 000056 (Tazewell County, IL).

ESP KREUZER CORES LLP                          RESPECTFULLY SUBMITTED,
400 S. County Farm Road, Suite 200
Wheaton, Illinois 60187
(630) 871-1002; ARDC #6274517; our file 1.10242K        Jeffrey S. Barger
jbarger@ekclawfirm.com; lmurphy@ekclawfirm.com