UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| OLD GUARD INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:23-cv-01098-SLD-JEH |
| | ) | |
| RIVERWAY PROPERTY | ) | |
| MANAGEMENT, LLC, AARON ROSSI, | ) | |
| MARK ROSSI, DAVIE AND | ) | |
| ASSOCIATES DERMATOPATHOLOGY, | ) | |
| P.A., and REDITUS LABORATORIES, | ) | |
| LLC, by and through its Receiver, Adam P. | ) | |
| Silverman, Esq., | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

Plaintiff Old Guard Insurance Company ("Old Guard") seeks a declaratory judgment regarding its potential duties to defend and indemnify Mark Rossi ("Mark"), Aaron Rossi ("Aaron"), and Riverway Property Management, LLC ("Riverway") (collectively "the Insureds") in two state-court lawsuits filed by Davie and Associates Dermatopathology, P.A. ("DAAD") and Reditus Laboratories, LLC ("Reditus Labs"), respectively.  *See generally* Second Am. Compl., ECF No. 23.[1]  Pending before the Court are Old Guard's Motion to Dismiss Defendants Reditus Laboratories, LLC and Mark Rossi, ECF No. 27, Motion for Default Judgment Against Defendants Riverway Property Management, LLC and Aaron Rossi, ECF No. 34, and Motion for Default Judgment Against Defendants Davie and Associates Dermatopathology, P.A., ECF No. 36.  For the following reasons, those motions are GRANTED.

---

[1] Citations to the Second Amended Complaint use page numbers because its paragraph numbering is inconsistent.

## BACKGROUND[2]

This case stems from two underlying state-court lawsuits: (1) a lawsuit filed by DAAD against Aaron, Riverway, Mark, Reditus Labs, and others, 2021-L-000019 (Tazewell Cnty. Cir. Ct. Feb. 3, 2021) ("DAAD Lawsuit"); and (2) a lawsuit filed by Reditus Labs by and through its receiver, Adam P. Silverman, against Aaron, Riverway, and others, 2023-LA-000056 (Tazewell Cnty. Cir. Ct. July 12, 2023) ("Reditus Labs Lawsuit").[3]  Details of these complaints' allegations inform whether Old Guard owes any duties to defend and indemnify the Insureds under the relevant insurance policies.

Old Guard's Second Amended Complaint describes the DAAD Lawsuit's operative complaint's allegations.  At bottom, the DAAD Lawsuit alleges that Aaron knowingly violated the operating agreement between Reditus Healthcare, LLC and DAAD to enrich himself, and it seeks monetary damages, attorneys' fees, and punitive damages, among other relief.  Reditus Healthcare, LLC, by and through Aaron, negotiated over several months with DAAD, by and through Dr. James Davie, to form Reditus Labs on or around June 20, 2019.  DAAD made capital contributions to Reditus Labs in excess of $220,000, but Aaron began a campaign in October 2019 to exclude DAAD from any role in Reditus Labs.  Aaron and Reditus Healthcare made a series of lowball offers to buy out DAAD's ownership interest in Reditus Labs, including

---

[2] Because "[u]pon default, the well-pleaded allegations of a complaint relating to liability are taken as true," *VLM Food Trading Int'l, Inc. v. Ill. Trading Co.*, 811 F.3d 247, 255 (7th Cir. 2016) (alteration in original) (quotation marks omitted), the facts are drawn from Old Guard's Second Amended Complaint unless otherwise noted.

[3] The Court may take judicial notice of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).  The Court takes judicial notice of the state-court dockets for these suits.  *See* Tazewell Cnty., *Case Information 2021-L-000019*, Tazewell Cnty. Cir. Ct., https://portal-iltazewell.tylertech.cloud/Portal/Home/Dashboard/29 (enter "2021-L-000019," verify humanity, select "Submit," and then select "2021-L-000019") (last visited Sept. 6, 2024); Tazewell Cnty., *Case Information 2023-LA-000056*, Tazewell Cnty. Cir. Ct., https://portal-iltazewell.tylertech.cloud/Portal/Home/Dashboard/29 (enter "2023-LA-000056," verify humanity, select "Submit," and then select "2023-LA-000056") (last visited Sept. 6, 2024); *see also* Reditus Labs Lawsuit Compl., Mot. Leave File Ex. 1, ECF No. 22-1 at 1–52; DAAD's Corrected Third Am. Compl., Suppl. Mem. L. Supp. Mots. Default J. Ex. 2, ECF No. 39-2.

during the period when Reditus Labs secured lucrative contracts to perform COVID-19 polymerase chain reaction ("PCR") testing for the State of Illinois and Peoria School District No. 150.  From January 2020 through 2021, Reditus Labs performed over 1.4 million COVID-19 PCR tests but did not distribute profits to DAAD.  Aaron and Reditus Healthcare concealed financial information from DAAD and "engaged in oppressive, willful, and persistent misconduct" intended to subject DAAD to significant income tax liabilities and penalties—exacerbating the lack of profit distributions—to leverage DAAD to surrender its ownership interest in Reditus Labs for less than fair value.  Second Am. Compl. 5.  Aaron and Reditus Healthcare then caused Reditus Labs to make unequal distributions, favoring Reditus Healthcare under the guise of payments to entities that Aaron controlled.  The DAAD Lawsuit also includes shareholder derivative claims benefitting Reditus Labs against attorneys and entities that Aaron formed which knowingly and intentionally aided Aaron's misappropriation of Reditus Labs's assets.  *See, e.g.*, DAAD's Corrected Third Am. Compl. ¶ 228, Suppl. Mem. L. Supp. Mots. Default J. Ex. 2, ECF No. 39-2 (alleging that certain attorneys breached fiduciary duties which they owed to Reditus Labs).

DAAD's first complaint was filed on February 3, 2021, its first amended complaint was filed on September 17, 2021, its second amended complaint was filed under seal on February 3, 2022, and its third amended complaint was filed under seal on December 29, 2022.[4]  A corrected version of the third amended complaint was docketed on March 7, 2024.  *See generally id.*  Old Guard first received notice of the incidents involving DAAD on January 13, 2023.

---

[4] Old Guard's Second Amended Complaint stated that this complaint was filed under seal based upon it bearing the words "FILED UNDER SEAL," but noted that as of May 9, 2024, the DAAD Lawsuit's third amended complaint was available to download via Tazewell County's online portal.  *See* Second Am. Compl. 7; Suppl. Mem. L. Supp. Mots. Default J. 2, ECF No. 39.

Old Guard's Second Amended Complaint similarly describes the Reditus Labs Lawsuit's operative complaint's allegations. Aaron advanced a misappropriation scheme involving fraud and deceit to willfully and wantonly breach duties owed to Reditus Labs and its members by misappropriating Reditus Labs's funds in a variety of ways, such as using its funds to: (1) enter into an employment agreement and a management services agreement that furthered Aaron's scheme; (2) fund certain settlement agreements; (3) purchase an industrial building in the name of AJR Consulting instead of Reditus Labs; (4) pay for leasehold improvements that benefitted an entity in which Aaron had an interest and causing Reditus Labs to enter into a month-to-month lease for the improved premises; and (5) fund an agreement with a medical group wholly owned by Aaron's father, Larry Rossi. Aaron also failed to maintain proper and adequate records of Reditus Labs's expenditures. The Reditus Labs Lawsuit seeks from Aaron an accounting of payments made by Reditus Labs to entities in which Aaron has an interest, recission of certain agreements, a constructive trust, disgorgement of compensation and benefits that Aaron received from Reditus Labs, monetary damages, and punitive damages. The Reditus Labs Lawsuit also implicates Riverway as a business organization that Aaron controlled which knowingly and substantially assisted Aaron's misappropriation scheme. The Reditus Labs Lawsuit's complaint was filed on July 12, 2023. *See generally* Reditus Labs Lawsuit Compl., Mot. Leave File Ex. 1, ECF No. 22-1 at 1–52. Old Guard first received notice of that lawsuit on November 28, 2023.

Old Guard issued a new commercial package policy—policy number CWP 181326K, effective October 14, 2021 to October 14, 2022—to Riverway. *See* New Ins. Pol'y CWP 181326K, Compl. Ex. 4, ECF No. 1-5. It also issued a renewal commercial package policy—policy number CWP 181326K, effective October 14, 2022 to October 14, 2023—to Riverway.

4

*See* Renewal Ins. Pol'y CWP 181326K, Compl. Ex. 5, ECF No. 1-6.  Broadly speaking, both the New Insurance Policy and Renewal Insurance Policy (collectively "the Policies") cover: (1) bodily injury and property damage liability; (2) personal and advertising injury liability; and (3) medical payments.  *E.g.*, New Ins. Pol'y 28–36; Renewal Ins. Pol'y 33–41.[5]

Old Guard filed its original complaint in this matter on March 9, 2023, its first amended complaint on March 20, 2023, and its second amended complaint on December 5, 2023.  On January 4, 2024, it moved to dismiss Reditus Labs and Mark.  Mot. Dismiss Reditus Labs & Mark ¶¶ 1–6.  It also successfully moved for the entry of default against Riverway, Aaron, and DAAD.  *See* Jan. 19, 2024 Text Orders (Hawley, M.J.) (Riverway and Aaron); Feb. 6, 2024 Text Order (Hawley, M.J.) (DAAD).  Shortly after default was entered against a particular defendant, Old Guard moved for the entry of default judgment against that defendant.  Mot. Default J. Riverway & Aaron; Mot. Default J. DAAD.  Because Old Guard's Second Amended Complaint stated that the DAAD Lawsuit's operative complaint was filed under seal in state court, the Court directed Old Guard to determine how it could provide the Court with the DAAD Lawsuit's operative complaint.  *See* Apr. 19, 2024 Text Order.  Old Guard complied by providing that operative complaint, along with a supporting memorandum and status report.  DAAD's Corrected Third Am. Compl.; Suppl. Mem. L. Supp. Mots. Default J., ECF No. 39; Status Rep., ECF No. 40.

This case is before the Court based upon diversity jurisdiction, *see* Second Am. Compl. 3 (citing 28 U.S.C. § 1332(a)), and the Court applies the substantive law of Illinois when construing the Policies, *see Selective Ins. Co. of S.C. v. Target Corp.*, 845 F.3d 263, 266 (7th Cir. 2016), *as amended* (Jan. 25, 2017).

---

[5] Citations to the Policies use the page numbers which are superimposed onto the documents by CM/ECF.

## DISCUSSION

### I.    Legal Standard

For both a motion to dismiss and motion for entry of default judgment, the court accepts the factual allegations related to liability in the operative complaint as true. *VLM Food Trading Int'l, Inc. v. Ill. Trading Co.*, 811 F.3d 247, 255 (7th Cir. 2016) (default judgment); *Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016) (motion to dismiss). Although the plaintiff's factual allegations are taken as true, the entry of a default judgment is not automatic, as "[p]laintiffs seeking default judgment must demonstrate that they are entitled to judgment as a matter of law." *Ford Motor Credit Co. v. Fincannon Ford, Inc.*, No. 1:19-CV-502-HAB, 2020 WL 6336209, at *1 (N.D. Ind. Oct. 29, 2020) (citing *Cass Cnty. Music Co. v. Muedini*, 55 F.3d 263, 265 (7th Cir. 1995)).

### II.    Motion to Dismiss

Old Guard moves to dismiss Reditus Labs and Mark, asserting that a stipulation between itself and Reditus Labs and a certification from Mark render any relevant controversy between itself and those Defendants moot. Mot. Dismiss Reditus Labs & Mark ¶¶ 1–6. Under the Declaratory Judgment Act, a district court, "[i]n a case of actual controversy within its jurisdiction, . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "Declaratory judgment actions are ripe and otherwise justiciable when 'the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Amling v. Harrow Indus. LLC*, 943 F.3d 373, 377 (7th Cir. 2019) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)). Subsequent

developments may render a declaratory judgment action non-justiciable, such as the withdrawal of a tender of defense and request for indemnification. *Selective Ins. Co. of S.C. v. Phusion Projects, Inc.*, 836 F. Supp. 2d 731, 732–34 (N.D. Ill. 2011); *see also Associated Indus. Ins. Co. v. Stahl Cowen Crowley Addis LLC*, No. 15 C 4296, 2016 WL 3088142, at *2 (N.D. Ill. June 2, 2016) ("Nearly every district court that has addressed the continuing validity of a declaratory judgment suit where the insured has withdrawn its claim has held that the case is moot.").

Here, Reditus Labs through its Receiver has stipulated that it is not an interested party with respect to this case, and that an order dismissing Reditus Labs due to the lack of a case or controversy between them would be appropriate. Stip., Mot. Dismiss Reditus Labs & Mark Ex. 2, ECF No. 27-2. Mark similarly signed a certification that he "is not making any claim for defense and/or indemnity against the [DAAD Lawsuit], under the policies of insurance that Old Guard . . . issued to Riverway . . ., thereby neutralizing any controversy from existing and rendering the declaratory judgment lawsuit moot." Withdrawal Tender, Mot. Dismiss Reditus Labs & Mark Ex. 1, ECF No. 27-1. Mark is a party in the DAAD Lawsuit but is not a party in the Reditus Labs Lawsuit. In the absence of any controversy between these parties, this action with respect to them is moot, and an order dismissing Reditus Labs and Mark for lack of subject matter jurisdiction is warranted. *See Phusion Projects*, 836 F. Supp. 2d at 732–34. Old Guard's motion to dismiss Reditus Labs and Mark as Defendants is therefore GRANTED.

## III.    Duty to Defend

In support of its request for the entry of default judgment against Aaron and Riverway, Old Guard argues that its potential duties to defend the Insureds are not triggered under the Policies. *See* Second Am. Compl. 19–23, 24–27; Mot. Default J. Riverway & Aaron 6–20.[6] It

---

[6] For LLCs, the Policies include as insureds "[y]our members . . . but only with respect to the conduct of your business," as well as "[y]our managers . . . but only with respect to their duties as your managers." New Ins. Pol'y

rests on its arguments regarding Aaron and Riverway to support its request for a default judgment against DAAD.  Mot. Default J. DAAD 2.

"An insurer may assert that it had no duty to defend (1) where the insurer was given no opportunity to defend; (2) where there was no insurance policy in existence; or (3) where coverage is not triggered by the allegations in the underlying complaint; in other words, when comparing policy and the complaint, there 'clearly was no coverage or potential for coverage.'" *Am. Safety Cas. Ins. Co. v. City of Waukegan*, 776 F. Supp. 2d 670, 695 (N.D. Ill. 2011) (quoting *Emps. Ins. of Wausau v. Ehlco Liquidating Tr.*, 708 N.E.2d 1122, 1135 (Ill. 1999)), *aff'd* 678 F.3d 475 (7th Cir. 2012).  Old Guard relies on the third option, asserting there is no potential for coverage under the Policies.  *See, e.g.*, Mot. Default J. Riverway & Aaron 21.  Under Illinois law, "[a]n insurance policy is a contract," and is subject to the general rules governing contract interpretation.  *Westfield Ins. Co. v. Vandenberg*, 796 F.3d 773, 777 (7th Cir. 2015) (alteration in original) (quoting *Hobbs v. Hartford Ins. Co. of the Midwest*, 823 N.E.2d 561, 564 (Ill. 2005)). In interpreting an insurance policy, a court "must construe the policy as a whole, taking into account the type of insurance for which the parties have contracted, the risks undertaken and purchased, the subject matter that is insured and the purposes of the entire contract."  *Great Am. Ins. Co. v. State Farm Fire & Cas. Co.*, 104 F.4th 1011, 1016 (7th Cir. 2024) (quotation marks omitted).

"The duty to defend is a broad one and usually arises not just when the allegations of the underlying complaint 'fall within . . . the policy's coverage,' but also when those allegations

---

36; Renewal Ins. Pol'y 41.  Old Guard argues that insured status for Aaron is not triggered under the policies because the underlying state-court lawsuits "do not include allegations with respect to Aaron performing duties related to the conduct of business that [are] identified in the Declarations."  Mot. Default J. 17.  Because the Court finds that Old Guard's duty to defend Aaron is not triggered on other grounds, it need not resolve this argument.  For purposes of this analysis, the Court assumes that Aaron is an insured under the Policies.

'potentially' fall within that coverage." *Id.* at 1018 (alteration in original) (quoting *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1220 (Ill. 1992)). "Provisions that exclude or limit coverage must be interpreted liberally in favor of the insured and against the insurer." *W. World Ins. Co. v. Frieden*, No. 4:16-cv-04038-SLD-JEH, 2018 WL 9880231, at *6 (C.D. Ill. July 18, 2018) (citing *Pekin Ins. Co v. Wilson*, 930 N.E.2d 1011, 1017 (Ill. 2010)). Yet "[a] policy does not need to exclude from coverage liability that was not contemplated by the parties and not intended to be covered under their agreement." *Vandenberg*, 796 F.3d at 779. "The duty to defend applies only to facts that are explicitly alleged; it is the actual complaint, not some hypothetical version, that must be considered." *Amerisure Mut. Ins. Co. v. Microplastics, Inc.*, 622 F.3d 806, 812 (7th Cir. 2010) (quotation marks omitted).

Starting with their text, the Policies provide for four categories of coverage: (1) bodily injury and property damage liability, New Ins. Pol'y 28–33; Renewal Ins. Pol'y 33–38; (2) personal and advertising injury liability, New Ins. Pol'y 33–34; Renewal Ins. Pol'y 38–39; (3) medical payments, New Ins. Pol'y 35; Renewal Ins. Pol'y 40; and (4) employee benefits liability, New Ins. Pol'y 44–45; Renewal Ins. Pol'y 49–50. Bodily injury, as modified by the Commercial General Liability Expanded Endorsement, is defined as "bodily injury, disability, sickness, or disease sustained by a person, including death resulting from any of these at any time" and "includes mental anguish or other mental injury resulting from 'bodily injury'." New Ins. Pol'y 80; Renewal Ins. Pol'y 86. Property damage is defined as "[p]hysical injury to tangible property, including all resulting loss of use of that property" as well as "[l]oss of use of tangible property that is not physically injured." New Ins. Pol'y 42; Renewal Ins. Pol'y 47. Personal and advertising injury covers various torts, such as false arrest, malicious prosecution, wrongful

eviction, slander, libel, invasion of privacy, intellectual property violations, and certain emotional harms.  New Ins. Pol'y 42, 80; Renewal Ins. Pol'y 47, 86.

For bodily injury and property damage liability, coverage is only triggered if the injury "is caused by an 'occurrence.'"  New Ins. Pol'y 28; Renewal Ins. Pol'y 33.  Crucially, an "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  New Ins. Pol'y 42; Renewal Ins. Pol'y 47. "Loss" is defined as "unintentional damage or destruction but does not include disappearance, theft, or loss of use."  New Ins. Pol'y 80; Renewal Ins. Pol'y 86.  The Policies contain exclusions which exclude coverage for certain personal and advertising injuries—for example, where the injury is "caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury'" or the injury arises "out of a breach of contract," excepting certain implied contracts for advertising ideas. New Ins. Pol'y 33; Renewal Ins. Pol'y 38.  The Policies state that the duty to defend against claims for bodily injury and property damage is triggered by a "suit" which seeks damages "that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies," with a similar provision for personal and advertising injuries.  New Ins. Pol'y 28, 33; Renewal Ins. Pol'y 33, 38.

Old Guard argues that the underlying state-court lawsuits describe intentional misconduct by Aaron and the entities which he controlled, like Riverway, such that the alleged injuries do not count as "occurrences" or are excluded as knowing violations of the rights of others.  *See, e.g.*, Mot. Default J. Riverway & Aaron 16 ("The language of the underlying complaints sounds in phrases such as 'intended by chicanery,' 'fraud,' 'embezzlement,' 'concealed;' 'theft,' 'refused to provide . . . information,' 'stole,' 'ignored,' 'conspired,' 'knowing,' 'willful,' and

'intentional;' which are the exact opposit[e] of accidental." (first alteration in original)).  It

further notes that disgorgement and other restitutionary remedies are not "losses" as that term is

used in the insurance context.  *See, e.g.*, *id.* at 8.  At bottom, it argues that consideration of the

Policies as a whole and their purposes make clear that they "do not provide coverage to

Riverway and Aaron for the business activity of misappropriating funds or profits that belong to

DAAD or Reditus Labs."  *Id.* at 15.

      Underlying all insurance is "the fortuity principle," which "addresses those situations

where a loss is not accidental, as it is against public policy to allow an insured to collect

insurance proceeds for a known or expected loss."  *USA Gymnastics v. Liberty Ins.

Underwriters, Inc.*, 27 F.4th 499, 518 (7th Cir. 2022); *see also Calvert Ins. Co. v. W. Ins. Co.*,

874 F.2d 396, 399 (7th Cir. 1989) (Illinois law); *Sarac v. Minn. Life Ins. Co.*, 529 F. Supp. 2d

924, 927 (N.D. Ill. 2007) (stating that under Illinois law, "something is 'accidental' for insurance

coverage purposes, when it 'happens by chance or fortuitously, without intention or design, and

. . . is unexpected, unusual and unforeseen" (alteration in original) (quoting *Taylor v. John

Hancock Mut. Life Ins. Co.*, 142 N.E.2d 5, 6 (Ill. 1957))).  "It would be a moral hazard to insure

against liability arising from intentional and inherently harmful conduct, such as criminal

conduct."  *USA Gymnastics*, 27 F.4th at 518; *see also Hartford Cas. Ins. Co. v. Karlin, Fleisher

& Falkenberg, LLC*, 822 F.3d 358, 359–60 (7th Cir. 2016) (Illinois law).

      For example, this Court was faced with a default judgment motion regarding an insurer's

duty to defend where the policy obligated the insurer to defend "against claims to which the

insurance applie[d]," which the policies defined as "demands for relief seeking to hold an

'insured' responsible for a 'wrongful act.'"  *Frieden*, 2018 WL 9880231, at *7 (quotation marks

omitted).  Wrongful acts covered only "negligent acts or omissions."  *Id.*  As the gravamen of the

underlying state-court complaints was that the defendant "intentionally converted money held in trust for others for its own use," this Court found that the "state court complaints allege[d] that [the defendant] engaged in intentional conduct only" such that "there [wa]s no coverage and [the plaintiff] ha[d] no duty to defend or indemnify." *Id.*

Further, a claim for damages is distinct from a claim for restitution, which "is a claim that the defendant has something that belongs of right not to him but to the plaintiff." *Ryerson Inc. v. Fed. Ins. Co.*, 676 F.3d 610, 613 (7th Cir. 2012). The Seventh Circuit succinctly noted that no one writes—and no state would enforce—insurance policies designed to cover the disgorgement of fraudulent proceeds, and because "[y]ou can't, at least for insurance purposes, sustain a 'loss' of something you don't (or shouldn't) have . . .[,] there is no insurable interest in the proceeds of a fraud." *Id.*; *see also Level 3 Commc'ns, Inc. v. Fed. Ins. Co.*, 272 F.3d 908, 910 (7th Cir. 2001) ("[A] 'loss' within the meaning of an insurance contract does not include the restoration of an ill-gotten gain . . . .").

Cases like *Frieden* and *Ryerson Inc.* squarely apply to this case because the underlying state-court lawsuits allege that Aaron and Riverway intentionally and knowingly engaged in misconduct which resulted in harms and ill-gotten gains, not that the complained-of injuries were the result of an unfortunate accident which could satisfy the Policies' definition of "occurrence." *See* New Ins. Pol'y 42; Renewal Ins. Pol'y 47. The Reditus Labs Lawsuit describes how Aaron engaged in intentional self-dealing via schemes "by which he would misappropriate unearned and unwarranted funds from Reditus Labs under the guise of legitimate payments." Reditus Labs Lawsuit Compl. ¶ 55. As examples, Aaron caused Reditus Labs funds to be used to: (1) pay himself via a sweetheart executive-compensation package which he crafted for himself, *id.*, (2) pay himself via a management entity which he controlled, *id.* ¶¶ 56–67; (3) loan himself $10

million via a promissory note which he largely did not pay back, *id.* ¶¶ 68–76; (4) settle pending

or threatened litigation against him stemming from a related business deal gone sour, *id.* ¶¶ 77–

94; (5) form commercially unreasonable real estate deals that favored other entities which Aaron

controlled at the expense of Reditus Labs, *id.* ¶¶ 95–110; and (6) inappropriately fund a lavish

lifestyle for himself, his family, and his friends, *id.* ¶¶ 111–58; *see also id.* ¶¶ 286–91

("Riverway . . . knowingly and substantially assisted [Aaron]'s actions that constituted his

wrongful and tortious scheme.").  The DAAD Lawsuit covers the same ground and alleges that

Aaron and Riverway's wrongful conduct was the result of intention, not inadvertence or

happenstance.  *See, e.g.*, DAAD's Corrected Third Am. Compl. ¶ 12 (describing the same six

categories as the most severely damaging "Big Six" allegations of misconduct).

    The gravamen of these allegations is that Aaron *intentionally* took money—which was

not his to take—such that these allegations do not fall within the Policies' definition of

"occurrence."  *See Frieden*, 2018 WL 9880231, at *7.  Further, these allegations relate to funds

to which Aaron and Riverway had no claim of right, and the proceeds of such fraudulent

behavior are not losses in the insurance sense.  *See Ryerson Inc.*, 676 F.3d at 613.  In the absence

of an insurable loss, the insurer has no duty to defend.  *See St. Paul Fire & Marine Ins. Co. v.

Village of Franklin Park*, 523 F.3d 754, 756–57 (7th Cir. 2008); *Strategic Cap. Bancorp, Inc. v.

St. Paul Mercury Ins. Co.*, No. 10-CV-2062, 2015 WL 13598261, at *9 (C.D. Ill. Sept. 25,

2015).  Such allegations are inconsistent with the type of insurance contracted for by Old Guard,

Aaron, and Riverway, exceed the risks purchased by Old Guard, and are beyond the subject

matter and overall purpose of the Policies.  *See Great Am. Ins. Co.*, 104 F.4th at 1016.

Therefore, Old Guard has no duty to defend Aaron or Riverway against these allegations of

intentional misconduct.

As to the potential coverage for personal and advertising injury liability implicated by the other allegations, Old Guard makes two primary arguments: (1) the underlying state-court lawsuits do not allege injuries within the Policies' definition of "advertisement"; and (2) the other allegations addressed to harms caused by Aaron's breaches of various contractual agreements are excluded under the Policies. *See, e.g.*, Mot. Default J. Riverway & Aaron 18–21. The Policies define an "advertisement" as a "notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters." New Ins. Pol'y 40; Renewal Ins. Pol'y 45. Applying similar language to claims related to stolen intellectual property, a court concluded that there was no coverage where the insured had merely incorporated the wrongfully obtained content into its products, as compared to an advertisement itself. *Lemko Corp. v. Fed. Ins. Co.*, 70 F. Supp. 3d 905, 917–19 (N.D. Ill. 2014). Here, the underlying state-court lawsuits do not allege that Aaron and Riverway engaged in any advertising at all—the complained-of conduct was done in attempted secrecy and did not relate to communications to the general public or specific market segments. These allegations do not implicate the "advertising" portion of the Policies' coverage.

Turning to Old Guard's second argument, breach of contract claims do not trigger a duty to defend if the general liability insurance policy expressly excludes such claims. For example, where a policy stated that the "Insurer shall not be liable for Loss on account of any Claim . . . arising out of . . . or in any way involving the actual or alleged breach of any contract," *Altom Transp., Inc. v. Westchester Fire Ins. Co.*, 823 F.3d 416, 419–22 (7th Cir. 2016) (quotation marks omitted), a complaint against the insured did not trigger the insurer's duty to defend because the complaint's allegations "ar[o]se directly from [a third party's] lease agreement with [the plaintiff], and therefore f[e]ll within the policy's contract claim exception," *id.* at 421–22.

14

As relevant here, the Policies exclude coverage for personal and advertising injuries which arise out of either a breach of contract or a knowing violation of another's rights.  New Ins. Pol'y 33; Renewal Ins. Pol'y 38.  The underlying state-court lawsuits allege that Aaron, assisted by entities like Riverway, knowingly breached certain agreements—like Reditus Labs's operating agreement—by improperly compensating himself.  *See, e.g.*, DAAD's Corrected Third Am. Compl. ¶¶ 12, 259.  These breach of contract claims are excluded by the Policies and Old Guard has no duty to defend Aaron or Riverway against these allegations.  *See Altom Transp.*, 823 F.3d at 421–22.

Old Guard does not extensively analyze the other two potential categories of coverage—medical payments and employee benefits liability—but neither category is implicated by the underlying state-court lawsuits.  Coverage for medical payments is only potentially triggered by certain bodily injuries which are "caused by an accident" on: (1) premises owned or rented by the insured; (2) on "ways" next to such premises, or (3) because of the insured's operations.  New Ins. Pol'y 35; Renewal Ins. Pol'y 40.  As discussed above, the underlying state-court lawsuits relate to intentional misconduct, not bodily injuries which were "caused by an accident."  *See* New Ins. Pol'y 35; Renewal Ins. Pol'y 40.  Therefore, those lawsuits do not fall within the Policies' coverage for medical payments.  As to employee benefits liability, the Policies exclude coverage for "[d]amages arising out of any intentional, dishonest, fraudulent, criminal, or malicious act, error or omission, committed by any insured, including the willful or reckless violation of any statute."  New Ins. Pol'y 45; Renewal Ins. Pol'y 50.  Similarly to how the Policies' exclusion for breach of contract and knowing violations of another's right operated to exclude coverage under the Policies for personal and advertising injury, the Court concludes that the Policies' exclusion for "Dishonest, Fraudulent, Criminal Or Malicious Act[s]" applies to

the underlying state-court lawsuits, which allege that Aaron and Riverway intentionally, dishonestly, and fraudulently acted to enrich Aaron.  *See, e.g.*, DAAD's Corrected Third Am. Compl. ¶¶ 12, 259.  The underlying state-court lawsuits do not fall within the Policies' coverage for employee benefits liability.

In sum, none of the allegations of either the underlying state-court lawsuits "potentially" fall within the Policies' coverage, Old Guard owes no duty to defend Aaron and Riverway against those allegations, and Old Guard has demonstrated its legal entitlement to a default judgment.  *See Great Am. Ins. Co.*, 104 F.4th at 1018 (quotation marks omitted); *see also Ford Motor Credit Co.*, 2020 WL 6336209, at \*1.

As to Old Guard's motion for a default judgment against DAAD, Old Guard noted in its Second Amended Complaint that "DAAD is a potentially interested organization" with respect to this suit.  Second Am. Compl. 2; *see also, e.g., Fathers of the Ord. of Mount Carmel, Inc. v. Nat'l Ben Franklin Ins. Co. of Ill.*, 697 F. Supp. 971, 973 (N.D. Ill. 1988) ("An injured party is a necessary party in a declaratory judgment action brought by an insurer against the insured regarding the insurer's obligation to provide coverage." (citing *M.F.A. Mut. Ins. Co. v. Cheek*, 363 N.E.2d 809, 811 (Ill. 1977))).  DAAD has defaulted and has not asserted any arguments to further its potential interest in ensuring that Old Guard's potential duties to defend Aaron, or Riverway are triggered with respect to the underlying state-court lawsuits.  *See* Feb. 7, 2024 Entry of Default; Feb. 14, 2024 Not. Service, ECF No. 37 (certifying that Old Guard's motion for default judgment against DAAD was served upon DAAD).  As the Court has concluded that Old Guard owes no such duty to Aaron or Riverway, a default judgment against DAAD is warranted as well.

16

## IV.     Duty to Indemnify

Old Guard further seeks a declaratory judgment that it owes no duty to indemnify Aaron

or Riverway because it owes no duty to defend them.  *See* Second Am. Compl. 23–24, 28.  "The

duty to defend is broader than the duty to indemnify, and where there is no duty to defend, a duty

to indemnify cannot arise."  *Cincinnati Ins. Co. v. Berkshire Refrigerated Warehousing, LLC*,

149 F. Supp. 3d 867, 873 (N.D. Ill. 2015) (citing *United Nat'l Ins. Co. v. Dunbar & Sullivan

Dredging Co.*, 953 F.2d 334, 338 (7th Cir.1992)); *see also Crum & Forster Managers Corp. v.

Resol. Tr. Corp.*, 620 N.E.2d 1073, 1081 (Ill. 1993) ("[W]here no duty to defend exists and the

facts alleged do not even fall potentially within the insurance coverage, such facts alleged could

obviously never actually fall within the scope of coverage.  Under no scenario could a duty to

indemnify arise." (emphasis omitted)).  Because the Court has concluded that Old Guard owes

no duty to defend Aaron or Riverway against the underlying state-court lawsuits, it accordingly

concludes that Old Guard does not owe them a duty to indemnify with respect to those same

lawsuits.

## CONCLUSION

Accordingly, Old Guard Insurance Company's Motion to Dismiss Defendants Reditus

Laboratories, LLC and Mark Rossi, ECF No. 27, Motion for Default Judgment Against

Defendants Riverway Property Management, LLC and Aaron Rossi, ECF No. 34, and Motion

for Default Judgment Against Defendants Davie and Associates Dermatopathology, P.A., ECF

No. 36, are GRANTED.  The Clerk is directed to: (1) terminate Reditus Laboratories, LLC and

Mark Rossi as Defendants on the docket; (2) enter judgment as follows: IT IS ORDERED AND

ADJUDGED that the claims against Defendants Mark Rossi and Reditus Laboratories, LLC, are

dismissed for lack of subject matter jurisdiction and that Plaintiff Old Guard Insurance Company

17

has no duty to defend or indemnify Defendants Aaron Rossi or Riverway Property Management, LLC, in the underlying state-court lawsuits at issue in this case; and (3) close the case.

  Entered this 6th day of September, 2024.

s/ Sara Darrow
_____
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE
